UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JEROME WILLIAM DEVEREAUX, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | 3:05-cv-562 |
| | ) | *Phillips* |
| | ) | |
| JIM WORTHINGTON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which petitioner alleges he received ineffective assistance of counsel. The matter is before the court on the respondent's answer to the petition and the petitioner's reply thereto. There is also pending petitioner's motion to substitute Warden David Mills for Warden Jim Worthington as the respondent in this case and petitioner's motion for an evidentiary hearing and expansion of the record. The motion to substitute [Court File No. 13] will be **GRANTED**. The court having determined, after a review of the answer and the records of the case, that petitioner is not entitled to habeas corpus relief, there is no need for an evidentiary hearing or expansion of the record. Accordingly, petitioner's motion in that regard [Court File No. 14] will be **DENIED**. The petitioner for the writ of habeas corpus will be **DENIED** and this action **DISMISSED WITH PREJUDICE**.

I.      Standard of Review

Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that petitioner is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

The respondent has provided the court with copies of the relevant documents as to petitioner's post-conviction proceedings. [Court File No. 10, Notice of Filing, Addenda 1-9]. Petitioner pleaded guilty, in the Criminal Court of Jefferson County, Tennessee, to an information charging him with attempted rape of a child. Petitioner filed a petition for post-conviction relief, in which he alleged ineffective assistance of counsel as well as error by the trial court in imposing sentence. The post-conviction petition was denied after an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. *Devereaux v. State*, No. E2004-01891-CCA-R3PC, 2005 WL 1353327 (Tenn. Crim. App. June 8, 2005) [Addendum 6], *perm. app. denied, id.* (Tenn. October 24, 2005) [Addendum 9]. The Tennessee Court of Criminal Appeals summarized the history of petitioner's conviction as follows:

The proof at the petitioner's post-conviction hearing revealed that the sixty-year-old petitioner was originally indicted in Knox County for rape of a child.[1] The victim was his five-year-old granddaughter. At the hearing, the petitioner's trial counsel recalled that the Knox County District Attorney General's office offered the petitioner the opportunity to plead guilty to aggravated sexual battery in exchange for a sentence of 7.2 years as an especially mitigated offender, with release eligibility after service of one hundred percent of the sentence. After earning the maximum possible sentencing credits, the petitioner could have been eligible for release after serving eighty-five percent of his sentence. Upon the advice of counsel, the petitioner rejected the plea offer and elected to proceed to trial. Trial counsel explained that he was aware that the offense had actually occurred in Jefferson County; therefore, he was "playing for the fumble" on the issue of venue. Counsel hoped that Knox County would proceed on the charges until jeopardy attached, then the petitioner could not be prosecuted on the charges.[2]

While the Knox County charge was pending, counsel had the petitioner evaluated by Dr. Dianna McCoy, a licensed psychologist practicing in Knoxville. The evaluation was performed in anticipation of a future parole hearing. However, counsel never received a report from Dr. McCoy. Despite the lack of information from Dr. McCoy, counsel anticipated that Dr. McCoy would testify at a future parole hearing that the petitioner, in compliance with Tennessee Code Annotated section 40-35-503(c) (2003), was not at risk to reoffend.

Before trial occurred in Knox County, the Knox County District Attorney General's office learned that the offense had occurred in Jefferson County; thus, the offense was being prosecuted in the wrong county. Accordingly, the Knox County District Attorney General's office sent the information regarding the offense to the Jefferson County District Attorney General's office.

---

[1]In fact, petitioner was never indicted in Knox County. Prior to taking the case to the grand jury, the Knox County District Attorney General realized venue was in Jefferson County, Tennessee.

[2]Counsel' thinking in this regard was in error. *See State v. Hutcherson*, 790 S.W. 2d 532, 534-35 (Tenn. 1990) (double jeopardy does not preclude retrial of criminal case in proper forum when first trial was reversed for failure to establish venue).

> Prior to a Jefferson County indictment on the charge of rape of a child, the petitioner and his counsel engaged in plea negotiations with the Jefferson County District Attorney General's office. The State submitted alternative plea offers. First, the State reiterated the Knox County offer of a guilty plea to aggravated sexual battery in exchange for a sentence of 7.2 years as an especially mitigated offender with release eligibility after service of one hundred percent of the sentence. If the petitioner earned the maximum amount of sentencing credits, he could potentially be released after serving eighty-five percent of the sentence. Alternatively, the State offered to allow the petitioner to plead guilty to attempted rape of a child in exchange for a sentence of twelve years with release eligibility after service of thirty percent of the sentence. The petitioner ultimately agreed to be charged by information, and he accepted the guilty plea to attempted rape of a child with the agreed twelve-year sentence.

*Id.*, slip op. at 1-2, 2005 WL 1353327 at *1 (footnotes omitted).

In support of his petition for the writ of habeas corpus, petitioner alleges he received ineffective assistance of counsel. The respondent contends he is entitled to judgment as a matter of law based upon the findings of the Tennessee state courts.

III.   State Court Findings

Pursuant to 28 U.S.C. § 2254(d), petitioner may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and

4

petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

IV.   Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

> Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id.* at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.* at 691-92.

The two-part test of *Strickland* also applies to ineffective assistance of counsel claims in cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52 (1985); *Sparks v. Sowders*, 852 F.2d 882 (6th Cir. 1988).

> We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann*

> *v. Richardson*, [397 U.S. 759 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58-59 (footnote omitted).

Petitioner claims he received ineffective assistance of counsel when his attorney failed to adequately explain his sentencing options and misstated petitioner's probable release date and parole eligibility. Petitioner specifically alleges his attorney erroneously told him that if he accepted the 12 years at 30%, he would be eligible for parole in 42 months, which would actually be 21 months because the Tennessee Department of Correction was giving two-for-one sentence credits at the time. Petitioner claims that rather than two-for-one sentence credit, the most he can get is 16 days credit every month for good behavior, which does not affect his parole eligibility date

Petitioner also alleges his attorney failed to inform him of the requirements of Tenn. Code Ann. § 40-35-503(c), which provides as follows:

> No person convicted of a sex crime shall be released on parole unless a psychiatrist or licensed psychologist designated as a health service provider has examined and evaluated such inmate and certified that, to a reasonable medical certainty, the inmate does not pose the likelihood of committing sexual assaults upon release from confinement. The examination and evaluation shall be provided by psychiatrists or licensed psychologists designated as health service providers whose services are contracted or funded by the department of correction or the board of paroles. The board shall consider any such other evaluation by a psychiatrist or licensed psychologist designated as a health service provider which may be provided by the defendant.

In that regard, petitioner claims that, although his attorney sent him to Dr. McCoy for an evaluation, his attorney never obtained a report from Dr. McCoy as to his likelihood of reoffending. Furthermore, according to petitioner, he learned from a counselor upon his transfer to the Tennessee Department of Correction that sex offenders never get parole.

Petitioner states that his main concern was receiving the least amount of punishment possible. Therefore, he alleges that, but for his attorney's erroneous advice, he would have accepted the plea offer of 7.2 years. He further claims that his guilty plea was not knowing and voluntary, as a result of his attorney's ineffective assistance of counsel.

Petitioner raised the above claims in his post-conviction petition. The Tennessee Court of Criminal Appeals summarized the evidence at the post-conviction hearing, as well as the findings of the trial court, as follows:

> Trial counsel recalled that the petitioner was an intelligent individual and had been a successful businessman prior to his retirement. Counsel stated, "I tried to provide all of the information that I could for him. Because the decision was his to make." The petitioner told counsel "when we first met that he was not going to put his granddaughter through a trial. He was adamant about that fact. And he wanted me to obtain the least amount of punishment as possible. He told me he would not put her through to trial." Moreover, counsel was aware that the petitioner had given a statement to police regarding the sexual abuse of his granddaughter. Counsel opined that if the case had gone to trial, the statement would have supported at least one count of rape of a child and multiple counts of aggravated sexual battery. Counsel believed that if the petitioner had received the minimum sentence of fifteen years for rape of a child, the sentence would have effectively been a life sentence for the petitioner because he would have to "flatten" the sentence.
>
> Trial counsel testified that on many occasions he discussed with the petitioner the terms of both guilty plea offers. Trial counsel explained to the petitioner that he would have to "flatten" the 7.2 year sentence, but he would possibly be eligible for release on the twelve-year sentence after serving thirty

percent of the sentence. Further, counsel recalled telling the petitioner that he could possibly earn additional credit for time served on the twelve-year sentence. Specifically, counsel believed that the petitioner could earn sixteen days additional credit for every thirty days the petitioner served. Counsel stated that "[t]he 16 days for every 30 days is my-was my understanding at the time, the amount of credit to be received. And, of course, all of that is contingent upon [the petitioner's] completing the programs and maintaining good behavior. And that was explained to him. None of this is automatic." Trial counsel stated that the petitioner understood that he was not guaranteed early release.

Dr. Clarence Sexton, pastor of Temple Baptist Church in Powell, testified that the petitioner sought his advice concerning which plea to accept. The petitioner told Dr. Sexton that there were two offers, and the one with the most years could result in the petitioner serving less time in confinement. Dr. Sexton recalled, "[H]e explained to me that the time had been explained to him so that he could reduce this sentence that nobody ever did the full sentence. And he could reduce the sentence. And if he did 21 months, he would serve the full sentence. It sounded a little strange to me, but that's what he told me."

The petitioner's wife, Jane S. Devereaux, testified that she was with the petitioner on the day of his guilty plea. She alleged that trial counsel averred that the petitioner would received "two-for-one jail credit," resulting in the petitioner having to serve only twenty-one months of his sentence in confinement. However, she acknowledged that during the guilty plea hearing, the petitioner was informed that he would be required to serve a sentence of twelve years with release eligibility after serving thirty percent of his sentence. Additionally, she acknowledged that the statements by the trial court made apparent the possibility that the petitioner might not be released from confinement before the expiration of his sentence.

Next, the petitioner's son, Jerome Devereaux, Jr., testified that he was with the petitioner on the day of his guilty plea. Trial counsel explained to the petitioner, " 'This is the deal that you're going to take. It's the-the 12 year where you've got to serve 30%.... You should get credit a day for two days time served.... So it should be 21 months, you're in and out."

The victim's mother, Tina Marie Devereaux, testified that the petitioner told her that he was accepting a sentence of twelve years which he would be able to "flatten" in twenty-one months. Distraught, she called the Jefferson

9

County District Attorney General's office. An assistant district attorney general told her that he did not see how the petitioner could be released from confinement after serving only twenty-one months.

Finally, the petitioner testified that trial counsel

> never explained any of the charges, what they were. He just ... told me that there was a 7 year plea and a 12 year plea. And he said the 12 year plea was at 30%. He never told me what the seven year plea was. But he told me the 12 year plea was at 30%.
>
> And he said - and he sat there with his little calculator, because he's not good with math, and he punched the buttons and he said there'd be 42 months you'd be eligible for parole. But since the State is giving 2-for-1, you'll be eligible for parole in 21 months.
>
> He also told me at the same time that he had a plan for the parole hearing whereas we had a good chance of getting parole without any problem.

The petitioner contended that counsel never informed him that he would have to be evaluated pursuant to Tennessee Code Annotated section 40-35-503(c) prior to release to determine his risk to again commit sexual offenses.

The petitioner maintained that after he was transferred from the Jefferson County Jail to the Tennessee Department of Correction, he met with a counselor who informed him that "they don't give parole to sex offenders." Additionally, an "institutional parole officer" told the petitioner that his chances of receiving parole were "slim to none."

The petitioner stated that trial counsel had "figured that 30% of the 12 years was 42 months, and he cut that in half because he said the State was giving 2-for-1. Be 21 months." After arriving at the Tennessee Department of Correction, the petitioner learned that the maximum additional credit he could earn was sixteen days a month.

The petitioner admitted that he understood that there was a possibility that parole might not be granted, but he believed that he had a good chance to be released after serving twenty-one months of his sentence in confinement.

> He stated that counsel warned him that his release might take longer than twenty-one months. Nevertheless, the petitioner testified that he thought that he might have to serve "a couple of months" longer, not years. The petitioner acknowledged that the trial court informed him that he would receive a twelve-year sentence with release eligibility after serving thirty percent of the sentence. He maintained that he did not question the judge about the sentence because he believed his attorney. He also maintained that he would have accepted the 7.2-year sentence "if I had known anything about it."
>
> At the conclusion of the hearing, the post-conviction court stated that "there's no question that there was an election by [the petitioner] to pursue a plea disposition" because of the petitioner's desire to prevent the victim from enduring a trial and also to receive lesser punishment. The post-conviction court found that the petitioner agreed to the twelve-year sentence because of the possibility that he would be released from confinement earlier than he would if he accepted the 7.2 year sentence. The court credited counsel's testimony that he gave the petitioner "all the information that he could provide to enable him to make an informed decision." Specifically, the post-conviction court found that counsel informed the petitioner that "the release eligibility date was just that. That it was an eligibility date, and that there was no guarantee of release." The post-conviction court found that there was no evidence that sex offenders are not awarded parole. Additionally, the court noted that the petitioner was informed at the guilty plea hearing that he would receive a twelve-year sentence with release eligibility after serving thirty percent of his sentence.
>
> The post-conviction court observed that trial counsel "advised [the petitioner] that 21 months was a likely time for a parole hearing, and that he was confident that he could bring proof forward, and that there was a strong possibility of release. But that there was no guarantees." The post-conviction court found that the petitioner, with this information, made a knowing and voluntary decision to accept the twelve-year sentence. Thus, the post-conviction court dismissed the petition.

*Devereaux v. State*, slip op. at 2-5 [Addendum 6], 2005 WL 1353327 at **2-4 (footnote omitted).

Petitioner has failed to rebut, by clear and convincing evidence, the findings of the state courts and they are presumed correct by this court. In addition, this court has reviewed

11

the entire record of petitioner's post-conviction proceedings, including the transcript of the post-conviction evidentiary hearing [Addendum 2, Transcript of the Evidence, volumes 1-3]; the foregoing findings by the Tennessee state courts are supported in the record.

In considering petitioner's claims of ineffective assistance of counsel, the Tennessee Court of Criminal Appeals noted that the standard of review is the two-prong test set forth in *Strickland v. Washington*. *Devereaux v. State*, slip op. at 6 [Addendum 6], 2005 WL 1353327 at *5. The appellate court thus looked to clearly established federal law in making its decision.

The court then concluded that the trial properly found that petitioner had not received the ineffective assistance of counsel under *Strickland v. Washington.*

> The petitioner complains that the inaccurate advice of counsel regarding release eligibility led him to pleading guilty to an offense that required a longer sentence than the competing plea offer. The post-conviction court found that the petitioner's intention since the inception of the case had been to negotiate a plea agreement; therefore, the question became to which offense the petitioner would plead and the sentence the appellant would receive.
>
> The post-conviction court found that counsel fully informed the petitioner regarding the terms of the alternative plea offers, including prospective release eligibility dates. Counsel clearly informed the petitioner that release eligibility was not guaranteed; however, under ideal circumstances, the petitioner would likely serve less time in confinement by taking the twelve-year sentence with the eligibility for release after serving thirty percent of his sentence. Regardless, the petitioner was aware of the potential that he would have to "flatten" either sentence that he accepted. Weighing his options, the petitioner determined that the twelve-year sentence had the potential to offer him less time in confinement. The petitioner was repeatedly advised that he would have to serve at least thirty percent of his twelve-year sentence before becoming eligible for release. We conclude that the petitioner was not prejudiced by counsel's advice regarding potential

> release eligibility dates. Moreover, even if counsel failed to advise the petitioner that he would be required to undergo a psychological evaluation prior to release, we conclude that the petitioner has not demonstrated any prejudice he suffered by such failure. As our supreme court has noted, "[t]he required evaluation affects the likelihood of actual release, but it does not affect the release eligibility date." Therefore, the petitioner is not entitled to relief on this issue.

*Id*., slip op. at 6-7, 2005 WL 1353327 at *5 (quoting *Jaco v. State*, 120 S.W. 2d 828, 832 (Tenn. 2003)) (internal citations and footnote omitted).

The conclusions of the state courts were not an unreasonable application of *Strickland v. Washington*. During the guilty plea hearing, petitioner was never promised he would receive parole; the trial court specifically referred to release as only a possibility.

> THE COURT: Have you been promised anything other that the terms of the Plea Agreement in exchange for your plea of guilty to this offense, sir?
>
> MR. DEVERAUX: No, sir.
>
> THE COURT: Do you freely and voluntarily waive your right to a trial by jury and plead guilty to the offense of Attempted Child Rape?
>
> MR. DEVERAUX: Yes, sir.
>
> THE COURT: Based upon your plea of guilty and the facts as summarized by General Murphy and outlined by General Murphy I find you guilty of the offense of Attempted Child Rape.
>
> I sentence you to twelve years in the Tennessee Department of Corrections as a Range One Offender.
>
> As a specific condition of your release in the event you, or when you are released, you're to have no contact with the victim.

[Addendum 2, vol. 1, Transcript of Plea Agreement Hearing, pp. 10-11].

Petitioner's attorney testified at the post-conviction hearing that he explained the two plea offers with petitioner, and that the 12-year sentence's release eligibility date of 30% would be set by the court, although petitioner's release eligibility would be set by the Department of Correction. [*Id.*, Transcript of Post-Conviction Release Hearing, pp. 11-12]. Counsel stated that he was aware of Tenn. Code Ann. § 40-35-503(c), which requires psychological evidence before parole can be considered for a sex offender, and for that reason referred petitioner to Dr. McCoy. [*Id.* at 12-13]. Counsel admitted that he never received a report from Dr. McCoy, but anticipated a favorable report. [*Id.* at 14]. To that end, the plan for petitioner's parole hearing was to present, at the earliest opportunity, all the evidence that could be mustered on his behalf for an early release; however, counsel's services were terminated prior to a parole hearing. [*Id.* at 16-17].

In counsel's opinion, without a plea agreement and based upon petitioner's statement to the police, the State could possibly proceed on two counts of child rape and multiple counts of aggravated sexual battery; counsel further testified that he advised petitioner that child rape carried a minimum sentence of fifteen years, that the counts could be "stacked," and that the sentence for child rape had to be "flattened." [*Id.* at 25-27]. Counsel testified that he gave petitioner all the information he could for making an informed decision, that petitioner understood there was a chance he would not be granted parole, and that it was petitioner's decision to accept the 12-year sentence. [*Id.* at 27].

Petitioner testified at the post-conviction hearing that, upon his transfer to the Tennessee Department of Correction, he learned his chances for parole were "slim to none" based upon Tenn. Code Ann. § 40-35-503. [*Id.*, vol. 2, p. 54]. Petitioner also testified that, prior to the entry of the guilty plea, his attorney assured him he would be home in 21 months because counsel had a good plan for the parole hearing. [*Id.* at 56]. Petitioner admitted, however, that he understood parole was a chance and not a guarantee, and, also, had he gone to trial, he was facing a sentence of 12 to 25 years. [*Id.* at 67-68]. Petitioner also admitted that the plea agreement made no reference to 21 months, but only a reference to a release eligibility of 30%. [*Id.*, vol. 3, p. 70].

The trial court accepted counsel's testimony that petitioner was fully aware of the consequences of his guilty plea and the Tennessee Court of Criminal Appeals agreed. In any event, the court found that petitioner was not prejudiced by his attorney's advice regarding parole eligibility, and this court concurs. *See McAdoo v. Elo*, 365 F.3d 487, 495 n.6 (6th Cir. 2004) ("As a practical matter, any information given to a defendant about parole at the time he pleads guilty is inherently imprecise. Both parole eligibility and likelihood are unpredictable.").

Based upon the foregoing, this court concludes that the appellate court's determination that petitioner received the effective assistance of counsel was neither contrary to, nor did it involve an unreasonable application of, federal law as established by the U.S. Supreme Court in *Strickland v. Washington*. Accordingly, petitioner is not entitled to habeas corpus relief.

V.   Conclusion

The petition for habeas corpus relief will be **DENIED** and this action **DISMISSED**. Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

      s/ Thomas W. Phillips
      United States District Judge